IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

David H. Gharrett,
Plaintiff,

v.

Kimberly Butler et al.
Defendants.
In their individual and official capacity.

18-958-NJR

COMPLAINT

SCANNED at PCC and E-Mailed
4/16/18 (date) by SL (initials)
11 (# of pages)

## COMPLAINT AT LAW

Now comes Plaintiff David H. Gharrett (hereinafter "Plaintiff"), pro se, and alleges the following against Defendants Kimberly Butler and John/Jane Doe's 1 through 8 for the reasons set forth below:

### NATURE OF ACTION

1.) This is a civil action brought pursuant to the Eighth Amendment of the United States Constitution, to seek monetary relief under 42 U.S.C section 1983, also declaratory and injunctive relief, and to redress deprivations of Plaintiff's Civil Rights which were precipitated by the Defendant's failure to protect Plaintiff from attack by another inmate, all while purporting to act under the color of law.

### JURISDICTION AND VENUE

2.) The Court has jurisdiction over this matter pursuant to 28 U.S.C section 1331 and 1343(a)(3). The declaratory and injunctive relief sought is authorized by 28 U.S.C sections 2202 and 2284.

3.) Venue is proper pursuant to 28 U.S.C section 1391(b)(2), in the United States District Court for the Southern District of Illinois, because the facts giving rise to the claims in this Complaint occurred in this district.

(1)

## PARTIES

4.) Plaintiff, David H. Gharrett, is an inmate in the Illinois Dept. of Corrections, housed in Pontiac Correctional Center currently, Inmate No. M38621, P.O. Box 99, Pontiac, IL 61764 in Livingston County.

5.) Defendant, Kimberly Butler, was the Warden at Menard Correctional Center at the time of Plaintiff's attack mentioned in this Complaint. Defendant Kimberly Butler, at that time, was legally responsible for all inmates safety, well-being, and health.

6.) Defendants, John/Jane Doe's one(1) through eight(8), were employees of Menard Correctional Center, and possibly still are. The identities of these Defendants are presently unknown to Plaintiff, as these identities become known, they will be added by name. These Defendants are sued in their individual capacity. At all times relevant to this action, these Defendants acted under color of law and acted deliberately indifferent to Plaintiff's numerous complaints of threats being made by other inmates and denying Plaintiff protective custody status upon request.

## FACTS

7.) On Feburary 19, 2015, while housed in the cell with inmate Lason Elliot, he informed Plaintiff that they could no longer be cellmate's due to a charge Plaintiff is currently incarcerated for. Inmate Elliot then went on to threaten Plaintiff by saying that if Plaintiff didn't leave out of the cell, Plaintiff would be "dealt" with by him and others from his gang (Elliot whom is a Blood gang member). On that same night, Plaintiff had a call pass to see the psychiatrist, Elliot advised Plaintiff that once he left he better not come back

(2)

or something would be waiting for me. With the known violence that occurs in Menard Correctional Center, Plaintiff instantly began to fear for his safety and life. (see: exhibit #1)

8.) Officer John Doe came to get me to go and see the psychiatrist, on our way, I advised this officer of the threats made by inmate Elliot and at that time, requested Protective Custody. Officer John Doe advised Plaintiff that he would look into the situation while Plaintiff spoke to the psychiatrist. After meeting with the psychiatrist, officer John Doe came to get Plaintiff, Plaintiff asked him had he looked into what he told him, officer John Doe stated that Plaintiff could either go back into the cell with inmate Elliot or go to Segregation. In fear for my safety and life due to cellmate's threats (Elliot) of "having something ready for me" if I returned to the cell, I tried to plead with officer John Doe and expressed my fears, officer John Doe once again to the Plaintiff stated that he could either go back into the cell (with Elliot) or go to Segregation for refusing housing. In complete fear, Plaintiff decided to go to Segregation to avoid any troubles possibly waiting for him back in the cell with Elliot. After Plaintiff served his time in Segregation (for refusing housing / Disobeying A Direct Order) and was released, Plaintiff immediately requested Protective Custody, Plaintiff was then transferred to the Protective Custody Unit awaiting approval. After approximately a week, Plaintiff was interviewed by officers John Doe and Jane Doe, they advised Plaintiff that he would be denied for Protective Custody, even after Plaintiff expressed his fears for his safety and life due to the threats made by Elliot. Officer John Doe and Jane Doe then went on to tell the Plaintiff

(3)

that even though they were going to deny him Protective Custody, they would make sure that Plaintiff was not placed in a cell with any gang members. After leaving the Protective Custody Unit, Plaintiff was returned to the West Cell House (where inmate Elliot and Plaintiff were housed when Plaintiff was initially threatened by Elliot). Plaintiff was taken to a cell on 8-gallery (where Elliot was still housed), when Plaintiff got to the cell that he would be housed in, Plaintiff immediately noticed that the person in the cell was a well-known Latin King gang member. (see: exhibit #1)

9.) Plaintiff had knowledge of the Latin Kings and Bloods being allies, so in fear once again, Plaintiff left back off of 8-gallery and advised officer John Doe that I was told that I would not be placed in the cell with any gang member, officer John Doe sent Plaintiff back onto 8-gallery. As Plaintiff walked back to the cell, another well-known Latin King gang member stated, "you know you can't go in that cell with my King brother", he then went on to threaten Plaintiff by stating, "if you go in there your not coming out."

10.) Plaintiff once again left off of 8-gallery and advised officer John Doe of the threat just made, officer John Doe placed Plaintiff into a holding cell and stated that he would look into the situation. Officer John Doe returned after a brief moment and advised Plaintiff that there was nothing he could do but place Plaintiff in segregation if he did not go to the cell, Plaintiff at this time, requested Protective Custody once again. Officer John Doe ignored Plaintiff's request for Protective Custody and was once again transferred to Segregation for refusing housing. After Plaintiff once again served his time in Segregation and was released, once again, Plaintiff immediately requested Protective Custody once again and Plaintiff was transferred to the Protective Custody Unit awaiting

(4)

approval. Approximately a week later, Plaintiff was interview by officers John Doe and Jane Doe, I advised them of the threats from the Latin King gang member and the threats of inmate Elliot, officers John Doe and Jane Doe advised me that my request for Protective Custody would be denied. Plaintiff filed a grievance on the denial, a few weeks later Plaintiff was seen by the Administrative Review Board for Protective Custody denial, Plaintiff explained everything and was denied once again. Plaintiff was released back into the general population and sent back to the WestCellHouse, the place where the threats have taken place. What Plaintiff feared the most, happened in November of 2016. Approximately around the month of October of 2016, Plaintiff was placed into a cell with another Latin King gang member. On the date of November 21, 2016, Plaintiff was sitting at the desk waiting to go to yard, out of no where, Plaintiff's cellmate kicked Plaintiff in the back of the head, the kick was so powerful it caused Plaintiff's head to strike the cell bars so hard, that it broke Plaintiff's eye socket and knocked Plaintiff out cold. (see: exhibit #1)

11.) Plaintiff has no knowledge as to what took place after the kick, when Plaintiff did awake, Plaintiff's cellmate was holding him in a headlock. Officer cuffed Plaintiff and his cellmate, Plaintiff was transferred to the Health Care Unit. After observation of Plaintiff's eye, Plaintiff was transferred to a outside hospital located close to Menard. (see: Medical Records attached)

12.) After Plaintiff was seen by doctor's, stitched up, and spent approximately two(2) weeks in Menard Correctional Center's Health Care Unit, Plaintiff was once again sent back to the WestCellHouse (where all above mentioned incidents took place). After being there approximately a few days, a cell house worker came to Plaintiff's cell and advised him that the members of the Vice Lords gang

⑤

where going to "fuck him up" if Plaintiff was to come out of his cell. A few hours later, a note was passed to Plaintiff from a few cells down, whom identified himself as a Blood gang member. In the note, he informed Plaintiff that he was given a order by other gang members to "handle the business and that I should move around if I knew what was best for me." Plaintiff wrote letters to the gallery officer, the cellhouse Sargeant, the cellhouse Lieutenant, and the cellhouse Major, advising them all that he wanted to be moved to Protective Custody due to constant threats being made and his fear for his safety and life. Plaintiff was finally approved for Protective Custody.

13.) Plaintiff would like to state for the record that the Latin Kings, Bloods, and Vice Lords gang are all "People" (known as Fin Balls, gangs that represent the Five Point star).

## LEGAL CLAIMS

14.) Plaintiff realleges and incorporates by reference Paragraphs 1 through 13 of this Complaint.

15.) Plaintiff has rights protected under the Eighth Amendment of the United States Constitution. This right includes the right to be free from unsafe confinement and failure to protect inmates from attacks by other inmates.

16.) Defendant Kimberly Butler, the Warden of Menard Correctional Center, acting under color of state law, violated Plaintiffs Eighth Amendment protected rights by failing to protect Plaintiff after Plaintiff notified officials of threats being made to him and denying him Protective Custody. Also only approving Plaintiff for Protective Custody after Plaintiff was attacked, even though Plaintiff had already identified the threat. Defendant

(6)

Kimberly Butler acted deliberately indifferent to Plaintiff's safety needs.

17.) Defendant's, John/Jane Doe's one(1) through eight(8), past and present employees of Menard Correctional Center, acting under the color of law, have violated Plaintiff's Eighth Amendment protected rights by failing to protect Plaintiff from attack by another prisoner. Defendants acted with deliberate indifference to Plaintiff's safety needs.

18.) Defendants Kimberly Butler and John/Jane Doe's have violated their duty and responsibility of protecting Plaintiff from attack and threats by another prisoner.

19.) Defendant Kimberly Butler possess the power to correct all remedies needed to ensure inmate's safety.

20.) The Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs described herein. Plaintiff has been and will continue to be irreparably injured by the conduct of defendants unless this Court grants the declaratory and injunctive relief which Plaintiff seeks.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Court enter judgement granting Plaintiff:

21.) A declaration that the acts and omissions described herein violated Plaintiff's rights under the Constitution and laws of the United States.

22.) A permanent injunction ordering defendants to permanently housed Plaintiff in Protective Custody.

23.) Compensatory damages in the amount of $50,000 against each defendant jointly and severally.

(7)

24.) Punitive damages in the amount of $50,000 against each defendant jointly and severally.
25.) Damages for physical and mental anguish in the amount of $50,000.
26.) Plaintiff's cost and fees in prosecuting this action.
27.) A jury trial on all issues triable by jury
28.) Any additional relief this Honorable Court deems just, proper, and equitable.

Feb. 17-2018
Respectfully Submitted
David H. Gharrett #M-38621
Pontiac Correctional Center
P.O. Box 99
Pontiac, IL. 61764

## VERIFICATION

I have read the foregoing Complaint and hereby verify that the matters alleged therein are true and correct, except as to matters alleged on information and belief, and as to those, I believe them to be true. I certify under penalty of perjury that the foregoing is true and correct.

Executed at Pontiac, IL. on Feb. 17-2018
David H. Gharrett #M-38621
David H. Gharrett #M-38621

(8)



**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF ILLINOIS**
prisoner.esl@ilsd.uscourts.gov

### ELECTRONIC FILING COVER SHEET

Please complete this form and include it when submitting any type of document, letter, pleading, etc. to the U.S. District Court for the Southern District of Illinois for review and filing.

David H. Gharrett          M-30621
Name                       ID Number

Please answer questions as thoroughly as possible and circle yes or no where indicated.

1. Is this a new civil rights complaint or habeas corpus petition?  **(Yes)** or No

   If this is a habeas case, please circle the related statute:   28 U.S.C. 2241 or 28 U.S.C. 2254

2. Is this an Amended Complaint or an Amended Habeas Petition?   Yes or **(No)**

   If yes, please list case number: _____

   If yes, but you do not know the case number mark here: _____

3. Should this document be filed in a pending case?   Yes or **(No)**

   If yes, please list case number: _____

   If yes, but you do not know the case number mark here: _____

4. Please list the total number of pages being transmitted:   ~~___~~ 63

5. If multiple documents, please identify each document and the number of pages for each document. For example: Motion to Proceed In Forma Pauperis, 6 pages; Complaint, 28 pages.

| Name of Document | Number of Pages |
|---|---|
| Complaint | 8 pages |
| Motion to Proceed I Forma Pauperis | 4 pages |
| Exhibits | #1 - #5 (51 pages) |
| Medical Records | |

Please note that discovery requests and responses are NOT to be filed, and should be forwarded to the attorney(s) of record. Discovery materials sent to the Court will be returned unfiled.