# UNITED STATES DISTRICT COURT
for the
Southern District of Illinois

David H. Gharrett )
_____ )  Case Number: 18-cv-958-NJR
_____ )              (Clerk's Office will provide)
_____ )
       Plaintiff/Petitioner(s) )  ☒ CIVIL RIGHTS COMPLAINT
           v.                  )     pursuant to 42 U.S.C. §1983 (State Prisoner)
Kimberly Butler et.al          )  ☐ CIVIL RIGHTS COMPLAINT
_____ )     pursuant to 28 U.S.C. §1331 (Federal Prisoner)
_____ )  ☐ CIVIL COMPLAINT
_____ )     pursuant to the Federal Tort Claims Act,
       Defendant/Respondent(s) )     28 U.S.C. §§1346, 2671-2680, or other law
In their individual capacity

I.    JURISDICTION   FIRST AMENDED COMPLAINT

   Plaintiff:

   A.   Plaintiff's mailing address, register number, and present place of
        confinement. David H. Gharrett #M38621
                     Pontiac Correctional Center
                     P.O. Box 99
                     Pontiac, IL 61764

   Defendant #1:

   B.   Defendant  Kimberly Butler  is employed as
                   (a) (Name of First Defendant)
                   Warden
                   (b) (Position/Title)
        with  Menard Correctional Center (IDOC)
              (c) (Employer's Name and Address)
              P.O. Box 1000 Menard, IL 62259

   At the time the claim(s) alleged this complaint arose, was Defendant #1
   employed by the state, local, or federal government?  ☒ Yes  ☐ No

   If your answer is YES, briefly explain: Kimberly Butler is/was the Warden of Menard
   Correctional Center (IDOC)

SCANNED at PCC and E-Mailed
5/7/18 (date) by VK (initials)
77 (# of pages)

(Rev. 7/2010)                           1

**Defendant #2:**

C. Defendant ~~[struck through]~~ Jeannette Cowan is employed as
(Name of Second Defendant)

Case Worker Supervisor (Protective Custody Approval/Denial)
(Position/Title)

with Menard Correctional Center (IDOC)
(Employer's Name and Address)

P.O. Box 1000 Menard, IL 62259

At the time the claim(s) alleged in this complaint arose, was Defendant #2 employed by the state, local, or federal government? ☒ Yes ☐ No

If you answer is YES, briefly explain: Jeannette Cowan is/was the Case Worker Supervisor at Menard Correctional Center (IDOC)

**Additional Defendant(s) (if any):**

D. Using the outline set forth above, identify any additional Defendant(s).

Defendant #3: Defendant John Doe #1 is employed as Internal Affairs Officers with Menard Correctional Center (IDOC), P.O. Box 1000 Menard, IL 62259.

Yes, Defendant #3 was employed by the State, Local, or Federal Government. Defendant #3 is/was a Internal ~~Officers~~ Affairs Officer

Continued on Attached Paper

Additional Defendants:

Defendant #4:

E. Defendant John Doe #2 is/was employed as Internal Affairs Officer at Menard Correctional Center, P.O. Box 1000 Menard, IL 62259. Yes, Defendant #4 is/was employed by the state, local, or federal government at the time these claims in this Complaint arose.

Defendant #5:

F. Defendant John Doe #3 is/was employed as Lieutenant at Menard Correctional Center, P.O. Box 1000 Menard, IL 62259. Yes, Defendant #5 is/was employed by the state, local, or federal government at the time these claims in this Complaint arose.

Defendant #6:

G. Defendant John Doe #4 is/was employed as Sergeant at Menard Correctional Center, P.O. Box 1000 Menard, IL 62259. Yes, Defendant #6 is/was employed by the state, local, or federal government at the time these claims in this Complaint arose.

Defendant #7:

H. Defendant John Doe #5 is/was employed as Security/Correctional Officer at Menard Correctional Center, P.O. Box 1000 Menard, IL 62259. Yes, Defendant #7 is/was employed by the state, local, or federal government at the time these claims in this Complaint arose.

<u>Additional Defendants:</u>
<u>Defendant #8:</u>

I. Defendant John Doe #6 is/was employed as Security/Correctional Officer at Menard Correctional Center, P.O. Box 1000 Menard, IL 62259. Yes, Defendant #8 is/was employed by the state, local, or federal government at the time these claims in this Complaint arose.

<u>Defendant #9:</u>

J. Defendant Jane Doe #7 is/was employed as a Administrative Review Board representative (Springfield) for the Illinois Department of Corrections, 1301 Concordia ct. Springfield, IL 62794. Yes, Defendant #9 is/was employed by the state, local, or federal government at the time these claims in this Complaint arose.

II. PREVIOUS LAWSUITS

   A. Have you begun any other lawsuits in state or federal court relating to your imprisonment? ☐ Yes ☒ No

   B. If your answer to "A" is YES, describe each lawsuit in the space below. If there is more than one lawsuit, you must describe the additional lawsuits on another sheet of paper using the same outline. <u>Failure to comply with this provision may result in summary denial of your complaint.</u>

      1. Parties to previous lawsuits:
         Plaintiff(s): N/A

         Defendant(s): N/A

      2. Court (if federal court, name of the district; if state court, name of the county): N/A

      3. Docket number: N/A

      4. Name of Judge to whom case was assigned: N/A

      5. Type of case (for example: Was it a habeas corpus or civil rights action?): N/A

      6. Disposition of case (for example: Was the case dismissed? Was it appealed? Is it still pending?): N/A

      7. Approximate date of filing lawsuit: N/A

      8. Approximate date of disposition: N/A

III. GRIEVANCE PROCEDURE

    A. Is there a prisoner grievance procedure in the institution? ☒ Yes ☐ No

    B. Did you present the facts relating to your complaint in the prisoner grievance procedure? ☒ Yes ☐ No

    C. If your answer is YES,
        1. What steps did you take?
Plaintiff filed numerous grievances by filing them directly to the Counselor. After no response and Plaintiff's transfer to another institution, Plaintiff filed copies with the Administrative Review Board.
        2. What was the result?
Plaintiff never received any responses to the grievances filed, no response from Menard Counselor or Administrative Review Board.

    D. If your answer is NO, explain why not.

    E. If there is no prisoner grievance procedure in the institution, did you complain to prison authorities? ☐ Yes ☐ No

    F. If your answer is YES,
        1. What steps did you take?

        2. What was the result?

    G. If your answer is NO, explain why not.

    H. Attach copies of your request for an administrative remedy and any response you received. If you cannot do so, explain why not: Attached

COUNT-1: Defendants failed to protect Plaintiff from serious risk of harm at the hands of other inmates in violation of the Eighth Amendment.

## FACTS

1.) On Feburary 19, 2015, while housed in the cell with inmate Lason Elliot, he informed Plaintiff that they could no longer be cellmates due to a charge Plaintiff is currently incarcerated for. Inmate Elliot went on to threaten Plaintiff by saying that if Plaintiff did not leave out of the cell, Plaintiff would be "dealt" with by him and others from his gang (Elliot whom is a Blood gang member).

2.) On that same night, Plaintiff had a call pass to see the psychiatrist, Elliot told Plaintiff that once he left, he better not come back or something would be waiting on him. With the known violence that occurs in Menard Correctional Center, Plaintiff instantly began to fear for his safety and life. (exhibit #1)

3.) Officer John Doe #5 (2nd shift/8 gallery officer) came to get Plaintiff to see the psychiatrist, on the way, Plaintiff advised this officer of the threats made by inmate Elliot, and at that time, Plaintiff requested Protective Custody. Officer John Doe #5 advised Plaintiff that he would look into the situation while Plaintiff spoke to the psychiatrist. After meeting with the psychiatrist, officer John Doe #5 came to get Plaintiff, Plaintiff asked him had he checked into his Protective Custody request, officer John Doe #5, along with John Doe #4 (Sergeant of the cellhouse), stated that Plaintiff could either go back into the cell with inmate Elliot or go to Segregation. Plaintiff being in fear for his safety and life due to the threats made by inmate Elliot, plead with officer John Doe #5 and John Doe #4 to allow him to go to Protective Custody. Both defendants once again told Plaintiff to either go back to the cell or go to Segregation for Disobeying A Direct Order. In complete fear, Plaintiff decided to go to Segregation to avoid any possible troubles back in the cell. While

defendants walked Plaintiff to Segregation, they encountered officer John Doe#3 (Lieutenant of the cellhouse).

4.) John Doe#4 and #5 advised John Doe#3 what was going on with the Plaintiff, John Doe#3 stated to Plaintiff that he had one more chance to go back to his cell, but Plaintiff pled with John Doe#3, but John Doe#3 ~~told~~ told John Doe#4 and #5 to go ahead and take Plaintiff to Segregation.

5.) After Plaintiff was released from Segregation, Plaintiff immediately requested Protective Custody once again, Plaintiff was transferred to the Protective Custody Unit awaiting approval. While awaiting approval, Plaintiff wrote multiple letters directly to Warden Kimberly Butler, advising her of his fears for his life and safety, telling her of the threats made by inmate Elliot.

6.) After approximately a week, Plaintiff was interviewed for Protective Custody by officer John Doe#1 and Jannette Cowan. After Plaintiff advised officer John Doe#1 and Jannette Cowan of the threats made by inmate Elliot and his absolute fear for his life and safety, both defendants advised Plaintiff that his request for Protective Custody would be denied. Officer John Doe#1 (Internal Affairs officer) and Janette Cowan then went on to tell the Plaintiff that even though they were going to deny him Protective Custody, they would make sure Plaintiff was not housed in a cell with another gang member. After being denied Protective Custody and leaving the Protective Custody Unit, Plaintiff was returned to the West Cellhouse (where Elliot and Plaintiff were housed when Plaintiff was initially threatened by Elliot). Plaintiff was taken to a cell on 8 gallery (where Elliot was still housed), when Plaintiff got to the cell that he would be housed in, Plaintiff

(2)

immediately noticed that the person in the cell was a well-known Latin King gang member. (see: exhibit #1)

7.) Plaintiff had knowledge of the Latin Kings and Bloods being allies, so in instant fear once again, Plaintiff left back off of 8-gallery and advised officer John Doe #6 (1st shift/ 8-gallery officer) that he was told that he would not be placed in the cell with any gang members, by Internal Affairs. Officer John Doe #6 demanded Plaintiff to return to his cell, as Plaintiff began to walk back to the cell, another well-known Latin King gang member stated, "you know you can't go in there with my King brother", he then went on to threaten Plaintiff by stating, "if you go in there, your not coming out."

8.) Plaintiff once again left off of 8-gallery and advised officer John Doe #6 of the threat made, officer John Doe #6 placed Plaintiff into a holding cell and stated the he would see what was going on. After a brief moment, officer John Doe #6 returned and advised Plaintiff that there was nothing he could do but place Plaintiff in Segregation if he did not go to the cell, Plaintiff at this time, once again requested Protective Custody. Officer John Doe #6 ignored Plaintiff's request for Protective Custody and walked Plaintiff to Segregation for Disobeying A Direct Order.

9.) After Plaintiff served his time in Segregation, once again, Plaintiff requested Protective Custody immediately, and was transferred to the Protective Custody Unit awaiting approval.

10.) Approximately a week later, Plaintiff was interviewed by officer John Doe #2 (Internal Affairs officer) and Jannette Cowan. Plaintiff advised both defendants of the threats from inmate Elliot and the Latin King gang members. Officer John

Doe #2 and Janette Cowan advised Plaintiff that his request would once again be denied.

11.) Upon waiting to be approved or denied, Plaintiff once again sent multiple letters to Warden Kimberly Butler, pleading to be approved for Protective Custody and explaining his fears for his life and safety. Plaintiff was advised that he had been denied Protective Custody and the denial was signed off by Warden Kimberly Butler.

12.) Plaintiff filed a grievance on the denial, a few weeks later Plaintiff was seen by the Administrative Review Board for his denial for Protective Custody. Plaintiff was interviewed by Administrative Review Board representative Jane Doe #7 and explained the threats made by the Blood and Latin King gang members, and his complete fear for his life and safety. Nonetheless, Plaintiff was denied Protective Custody again.

13.) Plaintiff was released back into general population and sent back to the West Cell House, the place where all the threats took place. What Plaintiff feared the most happened in November of 2016!

14.) Approximately, around the month of October of 2016, Plaintiff was placed into a cell with yet another Latin King gang member. On the date of November 21, 2016, Plaintiff was sitting at the desk in his cell, awaiting yard line, out of no where, Plaintiff's cellmate (the Latin King) kicked him in the back of the head, the kick was so powerful, it caused Plaintiff's head to strike the cell bars so hard, that it broke Plaintiff's eye bone and knocked him out cold.

15.) Plaintiff has no knowledge as to what took place after the kick, when Plaintiff did awake, Plaintiff's cellmate was holding him in a headlock, punching him. Officers came to the cell and broke up the commotion, cuffed Plaintiff and

(10)

cellmate, Plaintiff was then transferred to the Health Care Unit. After observation of Plaintiff's eye, Plaintiff was transferred to a outside hospital located close to Menard. (see: Medical Records attached)

16.) After Plaintiff was seen by doctor's, stitched up, and spent approximately two(2) weeks in Menard Health Care Unit, Plaintiff was once again sent back to the West Cell House (where all the threats and the attack took place).

17.) After being there approximately a few days, a cell house worker came to Plaintiff's cell and advised him that members of the Vice Lords gang were going to "fuck him up" if Plaintiff came out of his cell. A few hours later, a note was passed to Plaintiff from a few cells over, in the letter, the individual identified himself as a Blood gang member, in this note, he informed Plaintiff that he was given a order by gang members to "handle the business and that Plaintiff should go to Protective Custody to prevent this from happening."

18.) Plaintiff wrote multiple letters to Warden Kimberly Butler and Internal Affairs officers, ~~explain~~ explaining the constant threats and the previous attack, Plaintiff also wrote a letter to the CellHouse Major and Lieutenant explaining the situation, after the Protective Custody interview; Plaintiff was approved finally.

## LEGAL CLAIMS

19.) Plaintiff realleges and incorporates by reference Paragraphs 1 through 18 of this Complaint.

20.) Plaintiff has rights protected under the Eighth Amendment of the United States Constitution. This right includes the right to be free from

(5)

unsafe confinement and failure to protect inmates from attacks by other inmates.

21.) Defendant Kimberly Butler, the Warden of Menard Correctional Center, acting under color of state law, violated Plaintiffs Eighth Amendment protected right by failing to protect Plaintiff after Plaintiff notified officials, including defendant Butler, of threats being made to him and denying him Protective Custody. Also, only approving Plaintiff for Protective Custody after Plaintiff was attacked, even though Plaintiff had already identified the threat. Defendant Kimberly Butler acted deliberately indifferent to Plaintiffs safety needs.

22.) Defendant Jannette Cowan, the Case Worker Supervisor at Menard Correctional Center, acting under color of state law, violated Plaintiffs Eighth Amendment protected right by failing to protect Plaintiff after Plaintiff notified officials, including defendant Cowan, of threats being made to him and denying him Protective Custody. Also, only approving Plaintiff for Protective Custody after Plaintiff was attacked, even though Plaintiff had already identified the threat. Defendant Jannette Cowan acted deliberately indifferent to Plaintiffs safety needs.

23.) Defendant John Doe #1, the Internal Affairs officer at Menard Correctional Center, acting under color of state law, violated Plaintiffs Eighth Amendment protected right by failing to protect Plaintiff after Plaintiff notified officials, including defendant John Doe #1, of threats being made to him and denying him Protective Custody. Also, only approving Plaintiff for Protective Custody after Plaintiff was attacked, even though Plaintiff had already identified the threat. Defendant John Doe #1

(12)

acted deliberately indifferent to Plaintiff's safety needs.

24.) Defendant John Doe #2, the Internal Affairs officer at Menard Correctional Center, acting under color of state law, violated Plaintiff's Eighth Amendment protected right by failing to protect Plaintiff after Plaintiff notified officials, including defendant John Doe #2, of threats being made to him and denying him Protective Custody. Also, only approving Plaintiff for Protective Custody after Plaintiff was attacked, even though Plaintiff had already identified the threat. Defendant John Doe #2 acted deliberately indifferent to Plaintiff's safety needs.

25.) Defendant John Doe #3, the Lieutenant at Menard Correctional Center, acting under color of state law, violated Plaintiff's Eighth Amendment protected right by failing to protect Plaintiff after Plaintiff notified officials, including defendant John Doe #3 of threats being made to him and denying him protective custody. Also, only approving plaintiff for protective custody after plaintiff was attacked, even though plaintiff had already identified the threat. Defendant John Doe #3 acted deliberately indifferent to plaintiff's safety needs.

26.) Defendant John Doe #4, the Sergeant at Menard Correctional Center, acting under color of state law, violated Plaintiff's Eighth Amendment protected right by failing to protect plaintiff after plaintiff notified officials, including defendant John Doe #4 of threats being made to him and denying him protective custody. Also only approving

(7)

plaintiff for protective custody after plaintiff was attacked, even though plaintiff had already identified the threat. Defendant John Doe #4 acted deliberately indifferent to plaintiff's safety needs.

27.) Defendant John Doe #5, Security/correctional officer at menard correctional center, acting under color of state law, violated plaintiff's Eighth amendment protected right by failing to protect plaintiff after plaintiff notified officials, including defendant John Doe #5 of threats being made to him and denying him protective custody. Also only approving plaintiff for protective custody after plaintiff was attacked even though plaintiff had already identified the threat. Defendant John Doe #5 acted deliberately indifferent to plaintiff's safety needs.

28.) Defendant John Doe #6 the security/correctional officer at menard correctional center, acting under color of state law, violated plaintiff's Eighth amendment protected right by failing to protect plaintiff after plaintiff notified officials, including defendant John Doe #6 of threats being made to him and denying him protective custody. Also only approving plaintiff for protective custody after plaintiff was attacked even though plaintiff had already identified the threat. Defendant John Doe #6 acted deliberately indifferent to plaintiff's safety needs.

29.) Defendant Jane Doe #7 the Administrative Review Board representative (from Springfield) of Illinois Department of Correction's (I.D.O.C), acting under color of state law,

violated Plaintiff's Eighth amendment protected right by failing to protect Plaintiff after plaintiff notified officials, including defendant ~~Jane Doe~~ Jane Doe #7 of threats being made to him and denying him protective custody. Also only approving plaintiff for protective custody after plaintiff was attacked even though plaintiff had already identified the threat. Defendant Jane Doe #7 acted deliberately indifferent to plaintiff's safety needs

30.) Defendant Kimberly Butler possess the power to correct all remedies needed to insure inmate's safety.

31.) The Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs described herein. Plaintiff has been and will be irreparably injured by the conduct of defendants unless this Court grants the declaratory and injunctive relief which Plaintiff seeks.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Court enter judgement granting Plaintiff:

32.) A declaration that the acts and omissions described herein violated Plaintiff's rights under the Constitution and laws of the United States.

33.) A permanent injunction ordering defendants to permanently house Plaintiff in Protective Custody.

34.) Compensatory damages in the amount of $50,000 against each defendant jointly and severally.

35.) Punitive damages in the amount of $75,000 against each defendant jointly and severally.

36.) Damages for physical and mental anguish in the amount of $75,000.
37.) Plaintiff's cost and fees in prosecuting this action.
38.) Any additional relief this Honorable Court deems just, proper, and equitable.

IV. **STATEMENT OF CLAIM**

  A. State here, as briefly as possible, when, where, how, and by whom you feel your constitutional rights were violated. Do not include legal arguments of citations. If you wish to present legal arguments or citations, file a separate memorandum of law. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. If your claims relate to prison disciplinary proceedings, attach copies of the disciplinary charges and any disciplinary hearing summary as exhibits. You should also attach any relevant, supporting documentation.

  <u>SEE ATTACHED PAPERS:</u>

## V. REQUEST FOR RELIEF

State exactly what you want this court to do for you. If you are a state or federal prisoner and seek relief which affects the fact or duration of your imprisonment (for example: illegal detention, restoration of good time, expungement of records, or parole), you must file your claim on a habeas corpus form, pursuant to 28 U.S.C. §§ 2241, 2254, or 2255. Copies of these forms are available from the clerk's office.

SEE ATTACHED PAPERS

## VI. JURY DEMAND (check one box below)

The plaintiff ☒ does ☐ does not request a trial by jury.

## DECLARATION UNDER FEDERAL RULE OF CIVIL PROCEDURE 11

I certify to the best of my knowledge, information, and belief, that this complaint is in full compliance with Rule 11(a) and 11(b) of the Federal Rules of Civil Procedure. The undersigned also recognizes that failure to comply with Rule 11 may result in sanctions.

Signed on: 5-6-18
(date)

P.O Box 99
Street Address

Pontiac IL. 61764
City, State, Zip

David H. Gharrett
Signature of Plaintiff

David H. Gharrett
Printed Name

M-38621
Prisoner Register Number

N/A
Signature of Attorney (if any)