IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

DAVID H. GHARRETT, #M-38621,      )
                                  )
        Plaintiff,                )
                                  )
-vs-                              )        Case No.:   18-958-NJR-DGW
                                  )
KIMBERLY BUTLER, et al.,          )
                                  )
        Defendants.               )

## ANSWER AND AFFIRMATIVE DEFENSES TO
## PLAINTIFF'S FIRST AMENDED COMPLAINT (DOC. 7)

Defendants, KIMBERLY BUTLER and JEANNETTE COWAN, by their attorney, Lisa

Madigan, Attorney General of the State of Illinois, answer and raise the following affirmative

defenses to Plaintiff's *First Amended Complaint* (doc. 7), stating as follows:

I.   JURISDICTION   FIRST AMENDED COMPLAINT

Plaintiff:

A.   Plaintiff's mailing address, register number, and present place of
     confinement. David H. Gharrett #M38621
             Pontiac Correctional Center
                  P.O. Box 99
             Pontiac, IL 61764

**RESPONSE: Defendants admit Plaintiff is currently incarcerated with the
Illinois Department of Corrections and housed at Pontiac Correctional Center.**

Defendant #1:

B.   Defendant ___Kimberly Butler_____ is employed as
                 (a)      (Name of First Defendant)

     ___Warden_____
                 (b)              (Position/Title)

     with ___Menard Correctional Center (IDOC)_____
                 (c)      (Employer's Name and Address)

     ___P.O. Box 1000   Menard, IL, 62259_____

At the time the claim(s) alleged this complaint arose, was Defendant #1
employed by the state, local, or federal government?   ☒Yes   ☐ No

If your answer is YES, briefly explain: Kimberly Butler is/was the Warden of Menard
Correctional Center (IDOC)

**RESPONSE: Defendants admit Kimberly Butler was the Warden of Menard Correctional Center from April 16, 2014, until September 30, 2016. Defendants also admit numerous individuals served as chief administrative officer of Menard Correctional Center from April 16, 2016, until September 30, 2016, due to Kimberly Butler becoming Chief of Programs for the Illinois Department of Corrections.**

**Defendants deny the remaining allegations in this Paragraph.**

Defendant #2:

C.   Defendant ___~~Gwendolin~~ Jeannette Cowan___ is employed as

                 (Name of Second Defendant)

     ___Case Worker Supervisor (Protective Custody Approval/Denial)___
                 (Position/Title)

     with ___Menard Correctional Center (IDOC)_____
                 (Employer's Name and Address)

     ___P.O. Box 1000   Menard, IL 62259_____

At the time the claim(s) alleged in this complaint arose, was Defendant #2
employed by the state, local, or federal government?   ☒Yes   ☐ No

If you answer is YES, briefly explain: Jeannette Cowan is/was the Case Worker
Supervisor at Menard Correctional Center (IDOC)

**RESPONSE: Defendants admit Jeannette Cowan was the case worker supervisor at Menard Correctional Center from March of 2011 until January of 2017.**

**Defendants deny the remaining allegations in this Paragraph.**

**Additional Defendant(s) (if any):**

D.    Using the outline set forth above, identify any additional Defendant(s).

Defendant #3: Defendant John Doe #1 is employed as Internal Affairs Officers with Menard Correctional Center (IDOC), P.O. Box 1000 Menard, IL 62259.

Yes, Defendant #3 was employed by the State, Local, or Federal Government Defendant #3 is/was a Internal Affairs Officer

Continued on Attached Paper

Additional Defendants:

Defendant #4:

E. Defendant John Doe #2 is/was employed as Internal Affairs Officer at Menard Correctional Center, P.O. Box 1000 Menard, IL 62259. Yes, Defendant #4 is/was employed by the state, local, or federal government at the time these claims in this Complaint arose.

Defendant #5:

F. Defendant John Doe #3 is/was employed as Lieutenant at Menard Correctional Center, P.O. Box 1000 Menard, IL 62259. Yes, Defendant #5 is/was employed by the state, local, or federal government at the time these claims in this Complaint arose.

Defendant #6:

G. Defendant John Doe #4 is/was employed as Sergeant at Menard Correctional Center, P.O. Box 1000 Menard, IL 62259. Yes, Defendant #6 is/was employed by the state, local, or federal government at the time these claims in this Complaint arose.

Defendant #7:

H. Defendant John Doe #5 is/was employed as Security / Correctional Officer at Menard Correctional Center, P.O. Box 1000 Menard, IL 62259. Yes, Defendant #7 is/was employed by the state, local, or federal government at the time these claims in this Complaint arose.

<u>Additional Defendants:</u>

<u>Defendant #8:</u>

I. Defendant John Doe #6 is/was employed as Security/Correctional Officer at Menard Correctional Center, P.O. Box 1000 Menard, IL 62259. Yes, Defendant #8 is/was employed by the state, local, or federal government at the time these claims in this Complaint arose.

<u>Defendant #9:</u>

J. Defendant Jane Doe #7 is/was employed as a Administrative Review Board representative (Springfield) for the Illinois Department of Corrections, 1301 Concordia ct. Springfield, IL 62794. Yes, Defendant #9 is/was employed by the state, local, or federal government at the time these claims in this Complaint arose.

**RESPONSE: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraphs D–J.**

## II. PREVIOUS LAWSUITS

A. Have you begun any other lawsuits in state or federal court relating to your imprisonment?  ☐ Yes  ☒ No

B. If your answer to "A" is YES, describe each lawsuit in the space below. If there is more than one lawsuit, you must describe the additional lawsuits on another sheet of paper using the same outline. <u>Failure to comply with this provision may result in summary denial of your complaint</u>.

    1. Parties to previous lawsuits:
       Plaintiff(s): N/A

       Defendant(s): N/A

    2. Court (if federal court, name of the district; if state court, name of the county): N/A

    3. Docket number: N/A

    4. Name of Judge to whom case was assigned: N/A

    5. Type of case (for example: Was it a habeas corpus or civil rights action?): N/A

    6. Disposition of case (for example: Was the case dismissed? Was it appealed? Is it still pending?): N/A

    7. Approximate date of filing lawsuit: N/A

    8. Approximate date of disposition: N/A

**RESPONSE: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Section II.**

III. **GRIEVANCE PROCEDURE**

A. Is there a prisoner grievance procedure in the institution? ☑ Yes    ☐ No

B. Did you present the facts relating to your complaint in the prisoner grievance procedure?    ☑ Yes    ☐ No

C. If your answer is YES,
   1.   What steps did you take?
   Plaintiff filed numerous grievances by filing them directly to the Counslers. After no response and Plaintiff's transfer to another institution, Plaintiff filed copies with the Administrative Review Board.
   2.   What was the result?
   Plaintiff never received any responses to the grievances filed, no response from Menard Counsler or Administrative Review Board.

D. If your answer is NO, explain why not.

E. If there is no prisoner grievance procedure in the institution, did you complain to prison authorities?    ☐ Yes    ☐ No

F. If your answer is YES,
   1.   What steps did you take?


   2.   What was the result?


G. If your answer is NO, explain why not.

H. Attach copies of your request for an administrative remedy and any response you received. If you cannot do so, explain why not: Attached

**RESPONSE: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Section III.**

COUNT-1: Defendants failed to protect Plaintiff from serious risk of harm at the hands of other inmates in violation of the Eighth Amendment.

## FACTS

1.) On Feburary 19, 2015, while housed in the cell with inmate Lason Elliot, he informed Plaintiff that they could no longer be cellmate's due to a charge Plaintiff is currently incarcerated for. Inmate Elliot went on to threaten Plaintiff by saying that if Plaintiff did not leave out of the cell, Plaintiff would be "dealt" with by him and others from his gang (Elliot whom is a Blood gang member).

**RESPONSE: Defendants admit Plaintiff and Offender Lason Elliot were cellmates from January 21, 2015, through February 20, 2015.**

**Defendants deny violating any of Plaintiff's constitutional rights.**

**Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 1.**

2.) On that same night, Plaintiff had a call pass to see the psychiatrist, Elliot told Plaintiff that once he left, he better not come back or something would be waiting on him. With the Known violence that occurs in Menard Correctional Center, Plaintiff instantly began to fear for his safety and life. (exhibit #1)

**RESPONSE: Defendants admit Plaintiff met with Dr. Suneja, a psychiatrist, at Menard Correctional Center on February 19, 2015.**

**Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 2.**

3.) Officer John Doe #5 (2nd shift/ 8 gallery officer) came to get Plaintiff to see the psychiatrist, on the way, Plaintiff advised this officer of the threats made by inmate Elliot, and at that time, Plaintiff requested Protective Custody. Officer John Doe #5 advised Plaintiff that he would look into the situation while Plaintiff spoke to the psychiatrist. After meeting with the psychiatrist, officer John Doe #5 came to get Plaintiff, Plaintiff asked him had he checked into his Protective Custody request, officer John Doe #5, along with John Doe #4 (Sergeant of the cellhouse), stated that Plaintiff could either go back into the cell with inmate Elliot or go to Segregation. Plaintiff being in fear for his safety and life due to the threats made by inmate Elliot, plead with officer John Doe #5 and John Doe #4 to allow him to go to Protective Custody. Both defendants once again told Plaintiff to either go back to the cell or go to Segregation for Disobeying A Direct Order. In complete fear, Plaintiff decided to go to Segregation to avoid any possible troubles back in the cell. While

defendants walked Plaintiff to Segregation, they encountered officer John Doe #3 (Lieutenant of the cellhouse).

**RESPONSE: Defendants admit Plaintiff went to segregation on or about February 20, 2015, for disobeying a direct order and insolence.**

**Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 3.**

4.) John Doe #4 and #5 advised John Doe #3 what was going on with the Plaintiff, John Doe #3 stated to Plaintiff that he had one more chance to go back to his cell, but Plaintiff pled with John Doe #3, but John Doe #3 ~~ordered~~ told John Doe #4 and #5 to go ahead and take Plaintiff to Segregation.

**RESPONSE: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 4.**

5.) After Plaintiff was released from Segregation, Plaintiff immediately requested Protective Custody once again, Plaintiff was transferred to the Protective Custody Unit awaiting approval. While awaiting approval, Plaintiff wrote multiple letters directly to Warden Kimberly Butler, advising her of his fears for his life and safety, telling her of the threats made by inmate Elliot.

**RESPONSE: Defendants admit Plaintiff was released from segregation on April 20, 2015, and requested protective custody that same day.**

**Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 5.**

6.) After approximately a week, Plaintiff was interviewed for Protective Custody by officer John Doe#1 and Jannette Cowan. After Plaintiff advised officer John Doe#1 and Jannette Cowan of the threats made by inmate Elliot and his absolute fear for his life and safety, both defendants advised Plaintiff that his request for Protective Custody would be denied. Officer John Doe#1 (Internal Affairs officer) and Janette Cowan then went on to tell the Plaintiff that even though they were going to deny him Protective Custody, they would make sure Plaintiff was not housed in a cell with another gang member. After being denied Protective Custody and leaving the Protective Custody Unit, Plaintiff was returned to the West Cellhouse (where Elliot and Plaintiff were housed when Plaintiff was initially threatened by Elliot). Plaintiff was taken to a cell on 8 gallery (where Elliot was still housed), when Plaintiff got to the cell that he would be housed in, Plaintiff immediately noticed that the person in the cell was a well-known Latin King gang member. (see: exhibit #1)

**RESPONSE: Defendants admit Plaintiff requested to be released from protective custody on April 24, 2015, and that he was placed in West Cell House on 8 gallery on April 30, 2015.**

**Defendants deny the remaining allegations in Paragraph 6.**

7.) Plaintiff had knowledge of the Latin Kings and Bloods being allies, so in instant fear once again, Plaintiff left back off of 8 gallery and advised officer John Doe #6 (1st shift/8-gallery officer) that he was told that he would not be placed in the cell with any gang members, by Internal Affairs. Officer John Doe #6 demanded Plaintiff to return to his cell, as Plaintiff began to walk back to the cell, another well-known Latin King gang member stated, "you know you can't go in there with my King brother." he then went on to threaten Plaintiff by stating, "if you go in there, your not coming out."

**RESPONSE: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 7.**

8.) Plaintiff once again left off of 8-gallery and advised officer John Doe #6 of the threat made, officer John Doe #6 placed Plaintiff into a holding cell and stated the he would see what was going on. After a brief moment, officer John Doe #6 returned and advised Plaintiff that there was nothing he could do but place Plaintiff in Segregation if he did not go to the cell, Plaintiff at this time, once again requested Protective Custody. Officer John Doe #6 ignored Plaintiff's request for Protective Custody and walked Plaintiff to Segregation for Disobeying A Direct Order.

**RESPONSE: Defendants admit Plaintiff went to segregation on April 30, 2015, for disobeying a direct order.**

**Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 8.**

9.) After Plaintiff served his time in Segregation, once again, Plaintiff requested Protective Custody immediately, and was transferred to the Protective Custody Unit awaiting approval.

**RESPONSE: Defendants admit Plaintiff completed his term of segregation on June 30, 2015, admit Plaintiff requested protective custody on June 30, 2015, and admit Plaintiff was placed in protective custody pending approval of his protective custody request.**

10.) Approximately a week later, Plaintiff was interviewed by officer John Doe #2 (Internal Affairs officer) and Jannette Cowan. Plaintiff advised both defendants of the threats from inmate Elliot and the Latin King gang members. Officer John Doe #2 and Jannette Cowan advised Plaintiff that his request would once again be denied.

**RESPONSE: Defendants admit Plaintiff was interviewed by Jeannette Cowan and Intelligence/IA Officer Dillingham on July 1, 2015, concerning his June 30, 2015 protective custody request. Defendants admit Jeannette Cowan and Officer Dillingham recommended Plaintiff's request for protective custody be denied.**

**Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 10.**

11.) Upon waiting to be approved or denied, Plaintiff once again sent multiple letters to Warden Kimberly Butler, pleading to be approved for Protective Custody and explaining his fears for his life and safety. Plaintiff was advised that he had been denied Protective Custody and the denial was signed off by Warden Kimberly Butler.

**RESPONSE: Defendants admit Plaintiff's June 30, 2015 protective custody request was denied at the facility level.**

**Defendants deny that Kimberly Butler personally denied Plaintiff's June 30, 2015 protective custody request.**

**Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 11.**

12.) Plaintiff filed a grievance on the denial, a few weeks later Plaintiff was seen by the Administrative Review Board for his denial for Protective Custody. Plaintiff was interviewed by Administrative Review Board representative Jane Doe #1 and explained the threats made by the Blood and Latin King gang members, and his complete fear for his life and safety. Nonetheless, Plaintiff was denied Protective Custody again.

**RESPONSE: Defendants admit Plaintiff appealed the facility level denial of his June 30, 2015 protective custody request. Defendants admit Sherry Benton, Chairperson for the Administrative Review Board, interviewed Plaintiff concerning this appeal and recommended that the appeal be denied. Defendants also admit the acting director, or her designee, concurred with Ms. Benton's recommendation and denied Plaintiff's appeal.**

**Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 12.**

13.) Plaintiff was released back into general population and sent back to the West Cell House, the place where all the threats took place. What Plaintiff feared the most happened in November of 2016!

**RESPONSE: Defendants admit Plaintiff was released from protective custody on August 14, 2015, to West Cell House on 7 gallery.**

**Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 13.**

14.) Approximately, around the month of October of 2016, Plaintiff was placed into ae cell with yet another Latin King gang member. On the date of November 21, 2016, Plaintiff was sitting at the desk in his cell, awaiting yard line, out of no where, Plaintiff's cellmate (the Latin King) kicked him in the back of the head, the kick was so powerful, it caused Plaintiff's head to strike the cell bars so hard, that it broke Plaintiff's eye bone and knocked him out cold.

**RESPONSE: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 14.**

15.) Plaintiff has no knowledge as to what took place after the kick, when Plaintiff did awake, Plaintiff's cellmate was holding him in a headlock, punching him. Officers came to the cell and broke up the commotion, cuffed Plaintiff and

(11)

cellmate, Plaintiff was then transferred to the Health Care Unit. After observation of Plaintiff's eye, Plaintiff was transferred to a outside hospital located close to Menard. (see: Medical Records attached)

**RESPONSE: Defendants admit Plaintiff was sent to the emergency room of Chester Memorial Hospital on November 21, 2016, following a self-reported altercation with his cellmate.**

**Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 15.**

16.) After Plaintiff was seen by doctor's, stitched up, and spent approximately two (2) weeks in Menard Health Care Unit, Plaintiff was once again sent back to the West Cell House (where all the threats and the attack took place).

**RESPONSE: Defendants admit Plaintiff was assigned to the Menard Correctional Center infirmary from November 21, 2016, until December 7, 2016. Defendants also admit Plaintiff was placed in the West Cell House on 5 gallery on December 7, 2016.**

**Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 16.**

17.) After being there approximately a few days, a cell house worker came to Plaintiff's cell and advised him that members of the Vice Lords gang were going to "fuck him up" if Plaintiff came out of his cell. A few hours later, a note was passed to Plaintiff from a few cells over, in the letter, the individual identified himself as a Blood gang member, in this note, he informed Plaintiff that he was given a order by gang members to "handle the business and that Plaintiff should go to Protective Custody to prevent this from happening."

**RESPONSE: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 17.**

18.) Plaintiff wrote multiple letters to Warden Kimberly Butler and Internal Affairs officers, explaining the constant threats and the previous attack, Plaintiff also wrote a letter to the Cellhouse Major and Lieutenant explaining the situation, after the Protective Custody interview, Plaintiff was approved finally.

**RESPONSE: Defendants admit Plaintiff requested protective custody on or about December 12, 2016, and admit Plaintiff's request was approved.**

**Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 18.**

LEGAL CLAIMS

19.) Plaintiff realleges and incorporates by reference Paragraphs 1 through 18 of this Complaint.

**RESPONSE: Defendants restate their responses to Paragraphs 1 through 18 herein.**

20.) Plaintiff has rights protected under the Eighth Amendment of the United States Constitution. This right includes the right to be free from

unsafe confinement and failure to protect inmates from attacks by other inmates.

**RESPONSE: Defendants admit Plaintiff has certain rights under the United States Constitution but Defendants deny violating Plaintiff's constitutional rights.**

21.) Defendant Kimberly Butler, the Warden of Menard Correctional Center, acting under color of state law, violated Plaintiffs Eighth Amendment protected right by failing to protect Plaintiff after Plaintiff notified officials, including defendant Butler, of threats being made to him and denying him Protective Custody. Also, only approving Plaintiff for Protective Custody after Plaintiff was attacked, even though Plaintiff had already identified the threat. Defendant Kimberly Butler acted deliberately indifferent to Plaintiffs safety needs.

**RESPONSE: Defendants admit Kimberly Butler was the Warden of Menard Correctional Center from April 16, 2014, until September 30, 2016, and that she acted under color of state law during this time.**

**Defendants deny the remaining allegations in Paragraph 21.**

22.) Defendant Jannette Cowan, the Case Worker Supervisor at Menard Correctional Center, acting under color of state law, violated Plaintiffs Eighth Amendment protected right by failing to protect Plaintiff after Plaintiff notified officials, including defendant Cowan, of threats being made to him and denying him Protective Custody. Also, only approving Plaintiff for Protective Custody after Plaintiff was attacked, even though Plaintiff had already identified the threat. Defendant Jannette Cowan acted deliberately indifferent to Plaintiffs safety needs.

**RESPONSE: Defendants admit Jeannette Cowan was the case worker supervisor at Menard Correctional Center from March of 2011 until January of 2017, and that she acted under color of state law during this time.**

**Defendants deny the remaining allegations in Paragraph 22.**

23.) Defendant John Doe #1, the Internal Affairs officer at Menard Correctional Center, acting under color of state law, violated Plaintiff's Eighth Amendment protected right by failing to protect Plaintiff after Plaintiff notified officials, including defendant John Doe #1, of threats being made to him and denying him Protective Custody. Also, only approving Plaintiff for Protective Custody after Plaintiff was attacked, even though Plaintiff had already identified the threat. Defendant John Doe #1 acted deliberately indifferent to Plaintiff's safety needs.

**RESPONSE: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 23.**

24.) Defendant John Doe #2, the Internal Affairs officer at Menard Correctional Center, acting under color of state law, violated Plaintiff's Eighth Amendment protected right by failing to protect Plaintiff after Plaintiff notified officials, including defendant John Doe #2, of threats being made to him and denying him Protective Custody. Also, only approving Plaintiff for Protective Custody after Plaintiff was attacked, even though Plaintiff had already identified the threat. Defendant John Doe #2 acted deliberately indifferent to Plaintiff's safety needs.

**RESPONSE: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 24.**

25.) Defendant John Doe #3, the Lieutenant at menard Correctional center, acting under color of state law, violated Plaintiff's Eighth Amendment protected right by failing to protect Plaintiff after Plaintiff notified officials, including defendant John Doe #3 of threats being made to him and denying him protective Custody. Also, only approving plaintiff for protective Custody after plaintiff was attacked, even though plaintiff had already identified the threat. Defendant John Doe #3 acted ~~deliberately~~ deliberately indifferent to plaintiff's safety needs.

**RESPONSE: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 25.**

26.) Defendant John Doe #4, the sergeant at menard Correctional center, acting under color of state law, violated Plaintiff's Eighth Amendment protected right by failing to protect plaintiff after plaintiff notified officials, including defendant John Doe #4 of threats being made to him and denying him protective Custody. Also only approving plaintiff for protective custody after plaintiff was attacked, even though plaintiff had already identified the threat. Defendant John Doe #4 acted deliberately indifferent to plaintiff's safety needs.

**RESPONSE: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 26.**

27) Defendant John Doe # 5, Security/correctional officer at Menard correctional center, acting under color of state law, violated plaintiff's Eighth amendment protected right by failing to protect plaintiff after plaintiff notified officials, including defendant John Doe # 5 of threats being made to him and denying him protective custody. also only approving plaintiff for protective custody after plaintiff was attacked even though plaintiff had already identified the threat. Defendant John Doe # 5 acted deliberately indifferent to plaintiff's safety needs.

**RESPONSE: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 27.**

28.) Defendant John Doe # 6 the Security/correctional officer at Menard correctional center, acting under color of state law, violated plaintiff's Eighth amendment protected right by failing to protect plaintiff after plaintiff notified officials, including defendant John Doe # 6 of threats being made to him and denying him protective custody. also only approving plaintiff for protective custody after plaintiff was attacked even though plaintiff had already identified the threat. Defendant John Doe # 6 acted deliberately indifferent to plaintiff's safety needs.

**RESPONSE: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 28.**

29.) Defendant Jane Doe # 7 the Administrative Review Board representative (from Springfield) of Illinois Department of Corrections (I.D.O.C), acting under color of state law,

Violated plaintiff's Eighth amendment protected right by failing to protect plaintiff after plaintiff notified officials, including defendant ~~Kimberly~~ Jane Doe #2 of threats being made to him and denying him protective custody. Also only approving plaintiff for protective custody after plaintiff was attacked even though plaintiff had already identified the threat. Defendant Jane Doe #2 acted deliberately indifferent to plaintiff's safety needs

**RESPONSE: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 29.**

30.) Defendant Kimberly Butler possess the power to correct all remedies needed to insure inmate's safety.

**RESPONSE: Defendants deny the allegations in Paragraph 30.**

31.) The Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs described herein. Plaintiff has been and will be irreparably injured by the conduct of defendants unless this Court grants the declaratory and injunctive relief which Plaintiff seeks.

**RESPONSE: Defendants deny the allegations in Paragraph 31.**

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff respectfully prays that this Court enter judgement granting Plaintiff:

32.) A declaration that the acts and omissions described herein violated Plaintiffs rights under the Constitution and laws of the United States.

33.) A permanent injunction ordering defendants to permanently house Plaintiff in Protective Custody.

34.) Compensatory damages in the amount of $50,000 against each defendant jointly and severally.

35.) Punitive damages in the amount of $75,000 against each defendant jointly and severally.

36.) Damages for physical and mental anguish in the amount of $75,000.

37.) Plaintiffs cost and fees in prosecuting this action.

38.) Any additional relief this Honorable Court deems just, proper, and equitable.

**RESPONSE: Defendants deny Plaintiff is entitled to any relief whatsoever.**

**JURY DEMAND**

**Defendants request a trial by jury on all triable issues.**

**AFFIRMATIVE DEFENSES**

**1. Qualified Immunity**

At all times relevant to Plaintiff's Claims, Defendants charged herein acted in the good faith performance of their official duties without violating Plaintiff's clearly established

constitutional rights. Defendants are, therefore, protected from liability by the doctrine of qualified immunity.

**2. Injunctive Relief Barred and/or Limited**

To the extent Plaintiff seeks injunctive relief, such relief is barred and/or limited by the Eleventh Amendment to the United States Constitution and the Prison Litigation Reform Act, 42 U.S.C. § 1997e.

WHEREFORE, Defendants respectfully request this honorable Court deny Plaintiff any relief whatsoever.

Respectfully submitted,

KIMBERLY BUTLER and JEANNETTE COWAN,

    Defendants

LISA MADIGAN, Illinois Attorney General,

    Attorney for Defendants,

Jeremy C. Tyrrell, #6321649
Assistant Attorney General
500 South Second Street
Springfield, Illinois   62701
(217) 782-5819 Phone          By: s/Jeremy C. Tyrrell
(217) 782-8767 Fax           Jeremy C. Tyrrell
E-mail:   jtyrrell@atg.state.il.us    Assistant Attorney General

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

DAVID H. GHARRETT, #M-38621,   )
       )
     Plaintiff,   )
       )
-vs-   )   Case No.:  18-958-NJR-DGW
       )
KIMBERLY BUTLER, et al.,   )
       )
     Defendants.   )

## CERTIFICATE OF SERVICE

I hereby certify that on October 23, 2018, the foregoing document, *Answer and Affirmative Defenses to Plaintiff's First Amended Complaint (Doc. 7)*, was electronically filed with the Clerk of the Court using the CM/ECF system which will electronically send notice to:

NONE

and I hereby certify that on the same date, I caused a copy of the foregoing described document to be mailed by United States Postal Service, in an envelope properly addressed and fully prepaid, to the following non-registered participant:

David H. Gharrett, #M-38621
Pontiac Correctional Center
700 West Lincoln Street
P.O. Box 99
Pontiac, IL 61764

Respectfully submitted,

s/Jeremy C. Tyrrell
Jeremy C. Tyrrell, #6321649
Assistant Attorney General
500 South Second Street
Springfield, Illinois   62701
(217) 782-5819 Phone
(217) 524-5091 Fax
E-Mail:   jtyrrell@atg.state.il.us