IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DAVID H. GHARRETT, #M-38621, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| -vs- ) | Case No.: 18-958- MAB |
| ) | |
| KIMBERLY BUTLER, et al., ) | |
| ) | |
| Defendants. ) | |

## DECLARATION OF SHERRY BENTON

I, SHERRY BENTON, state that I have personal knowledge of the facts set forth herein, that I am competent to testify, and pursuant to 28 U.S.C. § 1746, I hereby declare as follows:

1. I am currently employed as a member of the Office of Inmate Issues for the Illinois Department of Corrections ("the Department"), otherwise known as the Administrative Review Board ("ARB"). My duties involve, among other things, reviewing and responding to grievances filed by Department inmates in the manner set forth herein. My duties also include conducting hearings when inmate appeal the denial of protective custody status.

2. Inmates incarcerated within the Department may file grievances in accordance with Department Rule 504F: Grievance Procedures for Committed Persons. Generally, an inmate must first attempt to resolve grievances through his counselor. If the grieved issue remains unresolved after such informal efforts, or, for example, involves a disciplinary proceeding, the inmate may submit a written grievance on a grievance form to the facility Grievance Officer designated by the Chief Administrative Officer ("CAO"). A grievance shall be filed within 60 days of discovery of the incident, occurrence, or problem giving rise to the grievance. The Grievance Officer may personally interview the inmate and/or witnesses as deemed appropriate and obtain relevant documents to determine the merits of the inmate's grievance. Upon completion of such

investigation, the Grievance Officer's conclusions and, if appropriate, recommended relief, is forwarded to the CAO. The CAO or CAO's designee's decision is then submitted to the grieving inmate.

3. If, after receiving the CAO's decision, the inmate feels the issue is unresolved, he may appeal in writing to the Director of the Department by submitting the Grievance Officer's report and CAO's decision. The ARB, as the Director's designee, reviews the appeal and first determines whether the inmate's grievance can be handled without the necessity of a hearing. If so, the inmate is so advised. Other matters are scheduled for an ARB hearing involving an interview of the grieving inmate, examining relevant documents and, at the ARB's discretion, calling witnesses. The ARB submits a written report of its findings and recommendations to the Director or Director's designee, who then reviews the report and makes a final determination on the grievance. A copy of the ARB's report and the Director's final decision is sent to the inmate who filed the grievance. The originals of these documents are maintained in the ARB files. Department Rule 504F: Grievance Procedures for Committed Persons provides no further means for review beyond this step.

4. Certain issues may be filed in a grievance directly to the ARB, rather than first through a counselor or grievance officer. These issues include: (a) Decisions involving the involuntary administration of psychotropic medication; (b) Decisions regarding protective custody placement, including continued placement in or release from protective custody; (c) Decisions regarding disciplinary proceedings which were made at a facility other than the facility where the inmate is currently assigned; and (d) Other issues except personal property and medical issues which pertain to a facility other than the facility where the inmate is currently assigned. These grievances are then handled in accordance with the procedures described in paragraph 3 above.

5. An inmate may request a grievance be handled on an emergency basis by forwarding the grievance directly to the CAO rather than to a counselor or grievance officer. If the CAO determines that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the inmate, the grievance may be handled on an emergency basis. If the CAO determines that there is no substantial risk of imminent personal injury or other serious or irreparable harm to the inmate, the inmate must follow the standard procedure for submitting and appealing a grievance, as detailed above.

6. The ARB maintains a file on each inmate who has submitted grievances to the ARB, containing copies of those grievances and the responses made. As a member of the Office of Inmate Issues, I am familiar with and regularly access the ARB files of inmates.

7. The ARB maintains a computer log known as "IGRV." Entries are made to track inmate grievances and they are made in the ordinary course of business and at the time of the events described therein by the Officials of the Illinois Department of Corrections with knowledge of the contents of those records.

8. On August 11, 2015, an Administrative Review Board hearing was scheduled with David Gharrett, #M38621. Mr. Gharrett was grieving denial of protective custody. Mr. Gharrett was personally interviewed by the Administrative Review Board. All information submitted to the Board by Mr. Gharrett, and the institution related to the issue being grieved, was reviewed. Issues warranting further action/consideration were discussed with the Menard Correctional Center administration.

9. The Board reviewed the Protective Custody vote sheet. Mr. Gharrett requested protective custody placement, stating the following: "I checked into protective custody two months

ago and then checked out thinking I would not be put with gang bangers and their own little rules. After I went to west house it was a gang banger in the cell. I talked to one of the other guys about this and asked if it would be a problem and he stated you already know gator joe. I am now checking in again for my safety and also my charge is a murder charge but IDOC has me as a sex offender." The facility's recommendation indicated no sufficient verifiable information to warrant protective custody placement. The Chief Administrative Officer concurred on June 4, 2015. Mr. Gharrett had the opportunity to give a statement at the hearing in front of myself. Based on a total review of all available information, it was the opinion of the Board that Mr. Gharrett did not provide sufficient verifiable information to warrant the offender's retention in protective custody, and therefore should have been placed back into general population.

10. I have read the foregoing and affirm that the facts contained herein are true and correct to the best of my knowledge and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this ___4th___ day of ___March___, 2020.

_____
SHERRY BENTON