IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DAVID H. GHARRETT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 18-CV-958-SMY |
| | ) |
| KIMBERLY BUTLER, JEANNETTE | ) |
| COWAN, WILLIAM SPILLER, | ) |
| ANDREW DILLINGHAM, SHERRY | ) |
| BENTON, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

David H. Gharrett, an inmate currently incarcerated at Pontiac Correctional Center ("Pontiac"), filed the instant lawsuit pursuant to 42 U.S.C. § 1983, claiming Defendants failed to protect him from his cellmates in violation of the Eighth Amendment (Doc. 1, 38). Gharrett alleges that he was threatened by a cellmate, that he requested protective custody, that protective custody was denied, and that he was brutally attacked by another cellmate who was part of the same or affiliated gang.

Now pending before the Court is Defendants' Motion for Summary Judgment (Doc. 66). Gharrett filed a Response in opposition (Doc. 73). For the following reasons, the Motion is **GRANTED**.

## Factual Background

The following material facts are undisputed: When Gharrett was leaving his cell on February 19, 2015 to go to a medical appointment, his cellmate, Lason Elliot, stated "that he was supposed to fight [Gharrett] at commissary that day, but because he didn't get the chance, either

[Gharrett] had to leave the cell or he was going to have something waiting for [him] when [he] came back" (Doc. 67-2, pp. 11-13; Doc. 73,[1] p. 33).  Gharrett didn't know exactly what Elliot meant by his threat (Doc. 73, p. 5).  Gharrett wrote a letter or kite about the threat and handed it to the officer escorting him to his medical appointment (Doc. 67-2, pp. 11, 14-5).  He also verbally told the officer, other officers, and his doctor about the threat and requested protective custody (*Id.*).  After his appointment, Gharrett was placed in a holding cell and told that he could either go back to his cell or to segregation (Doc. 67-2, pp. 16-17).  A lieutenant, a sergeant, and a correctional officer then placed Gharrett in segregation for disobeying a direct order and insolence (Doc. 67-2, p. 18; Doc 73, p. 4).[2]

Gharrett was released from segregation on April 20, 2015 and requested protective custody (Doc. 73, p. 35):

> I request protective custody do to one of my cellys informed me that his guys and everybody else has been informed about my murder case let me know that East and West would fight me every time I get out of seg.
> (Doc. 73, p. 43).

Gharrett spoke to Defendants Jeannette Cowan and William Spiller after being placed in protective custody (Doc. 67-2, p. 19).  Thereafter on April 24, 2015, he signed himself out of protective custody, indicating "I no longer want PC"[3] after he was told by Cowan and Spiller that he would not be placed in a cell with a gang member (Doc. 73, p. 36; Doc. 67-2, pp. 19-20).  When Gharrett was returned to a cell, he believed that his new cellmate was a gang member and refused to enter the cell (Doc. 67-2, p. 24).  An unknown officer put him in a holding cell and told him that he

---

[1] Gharrett's response to the Motion for Summary Judgment is in the form of an affidavit having been signed under penalty of perjury.

[2] None of the individuals Gharrett interacted with on February 19, 2015 are Defendants in this case.

[3] While it is undisputed that Gharrett signed out of protective custody, he disputes that he stated on the sign out sheet that he no longer wanted protective custody (Doc. 73, p. 5)

could not request protective custody because he had just been released from protective custody (Doc. 67-2, p. 26). He was then placed in segregation for disobeying a direct order. Gharrett again requested protective custody after he was released two months later (Doc. 67-2, p. 26):

> I checked into PC 2 months ago and then checked out thinking I wouldn't be put with gang bangers and there own little rules. When I went to west house it was a gang banger in the cell. I talked to one of the other guys about this and asked if it would be a problem and he stated you already know gator. So I am now checking in again for my safety and also my charge is a murder charge but IDOC has me on as a sex offender.
> (Doc. 67-2, p. 40).

Gharrett was again interviewed by Cowan and by Andrew Dillingham. They both recommended that protective placement be denied because his claims were vague, it was impossible to segregate him from all gang members, and his allegations were unsubstantiated (Doc. 73, p. 45; Doc. 67-6, p. 2, ¶ 8; Doc. 67-9, p. 2, ¶ 7). Defendant Kimberly Butler denied protective custody on July 6, 2015 based on the recommendation and Gharrett appealed to the Administrative Review Board (Doc. 67-6, p. 5). A hearing on the appeal was held on August 11, 2015 before Defendant Sherry Benton during which Gharrett provided a statement that "a whole group of gangs" were after him (Doc. 73, p. 44). Benton found that Gharrett did not provide "sufficient verifiable information" to warrant protective custody and directed that inmate Elliot be placed on Gharrett's "keep separate from" list (*Id.*). The acting director of the Illinois Department of Corrections concurred on August 12, 2015 (*Id.*).

Gharrett was sent back to a cell in the West Cell House, Gallery 7 on August 14, 2015. From October 8, 2016 to November 21, 2016, he was celled with inmate Aaron Mejia (Doc. 73, p. 12-3). On November 21, 2016, he was in an altercation with Mejia that resulted in an orbital fracture requiring medical treatment at Chester Memorial Hospital (Doc. 73, pp. 49-50). Gharrett does not know why Mejia hit him (Doc. 73, p. 13). Gharrett returned from the hospital on

December 7, 2016 and was placed in a cell in the West Cell House, Gallery 5 (Doc. 73, p. 48). He requested and was granted protective custody on December 12, 2016 (Doc. 73, p. 15).

Gharrett claims to have written a number of letters to Defendant Kimberly Butler but received no response (Doc. 67-2). Butler's correspondence logs do not indicate that she received any letters or kites from Gharrett from 2014 to 2016 (Doc. 67-11, p. 1, ¶ 4) and she maintains that she did not know about Gharrett's problems with Mejia (Doc. 73, pp. 16-7). There is no evidence of what the letters contained.

## Discussion

Summary judgment is proper if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). Once a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing there is a genuine issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

Prison officials owe inmates a duty to protect them from violence at the hands of other inmates. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994); *Guzman v. Sheahan*, 495 F.3d 852, 856–57 (7th Cir. 2007). To prevail on an Eighth Amendment failure to protect claim, a prisoner must demonstrate that he is incarcerated under conditions posing a substantial risk of serious harm and the defendant(s) acted with deliberate indifference to his health or safety. *Brown v. Budz*, 398 F.3d 904, 909 (7th Cir. 2005). Awareness of a specific, impending, and substantial threat to the plaintiff's safety is necessary to support a failure to protect claim. *Pope v. Shafer,* 86 F.3d 90,92 (7th Cir. 1996). A plaintiff must demonstrate that he was subject to a substantial risk of future harm that was "so great" that it was "almost certain to materialize if nothing [wa]s done." *Brown*, 398 F.3d at 911.

Because prisons are inherently dangerous places, a failure to protect claim cannot be predicated "merely on knowledge of general risks of violence in a detention facility." *Brown*, 398 F.3d at 913. Instead, the plaintiff must establish that "the defendant had actual knowledge of an impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." *Santiago v. Wells*, 599 F.3d 749, 756 (7th Cir. 2010). Here, Gharrett sought protective custody in April and June 2015 and was immediately placed in protective custody and interviewed. His written requests for protective custody were vague and there is no evidence that any statements he made to Defendants alerted them to a specific, impending, and substantial threat to his safety. His interactions with Cowan, Spiller, and Dillingham occurred two months after the vague threat and there is no showing of any additional threats or that Gharrett conveyed any other information that would have alerted them to the urgency of the situation. On this evidence, no jury could reasonably conclude that Defendants were deliberately indifferent to Gharrett's safety and welfare.

Gharrett's claims against Benton and Butler also fail as a matter of law. "[T]he fact that an inmate sought and was denied protective custody is not dispositive of the fact that prison officials were therefore deliberately indifferent to his safety." *Lewis v. Richards*, 107 F.3d 549, 553 (7th Cir. 1997). The question here is whether either Butler or Benton were aware of a serious risk of harm to Gharrett and failed to take reasonable steps to protect him from that harm. Without knowledge of a specific and credible threat, neither Butler nor Benton (or any Defendant) can be deemed deliberately indifferent to Gharrett's safety by refusing to place him in protective custody.

There is no evidence that Gharrett reported other than a general fear that various gangs were after him and that Elliot made a vague statement to him. *See e.g.*, *Sinn v. Lemmon*, 911 F.3d 412 (7th Cir. 2018) (reversing summary judgment were the plaintiff presented evidence that the

defendant was aware of general patterns of gang violence, had independent knowledge of a previous gang-member attack on the plaintiff, and wrote the defendant a letter explaining the basis for his fear of attack.). Without knowing more specific information regarding the risk of serious harm that Gharrett faced, Benton and Butler cannot be held liable for failing to protect him from the Elliot attack.

Over a year passed between Gharrett's complaint about Elliot and the attack by Mejia. There is no evidence that any Defendant was aware of the specific threat posed by Mejia – even Gharrett does not know why he was attacked. Finally, there is no showing that Gharrett was "an inmate who belongs to an identifiable group of prisoners for whom the risk of assault is a serious problem of substantial dimensions, including prisoners targeted by gangs." *Lewis*, 107 F.3d at 553.[4] While it is unfortunate that Gharrett was attacked in custody, the attack was not the result of deliberate indifference to his safety.

## Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment (Doc. 66) is **GRANTED**. The Clerk of Court is **DIRECTED** to enter judgment accordingly and to close the case.

**IT IS SO ORDERED.**

**DATED: September 9, 2021**

**STACI M. YANDLE**
**United States District Judge**

---

[4] Given this conclusion, it is not necessary for the Court to address Defendants' argument that they are entitled to qualified immunity.